**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BETTY JEAN TURNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.  14-1093 (RC) |
| | ) |
| JOHN ENZLER *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

**I.  INTRODUCTION**

What remains of this civil action are Plaintiff Betty Jean Turner's claims of age and race discrimination against her former employer, Catholic Charities of the Archdiocese of Washington ("Catholic Charities").[1] The claims arose from Plaintiff's termination in May 2014. The parties have completed discovery, and Defendant has moved for summary judgment under Fed. R. Civ. P. 56, ECF No. 54.  Plaintiff has opposed the motion, ECF No. 64, and Defendant has replied, ECF No. 66.  The Court finds from the summary judgment record that Defendant has established legitimate, non-discriminatory reasons for plaintiff's termination, which Plaintiff has not sufficiently rebutted.  Therefore, the Court grants summary judgment to Defendant for the reasons explained below.

---

[1]  *See* Aug. 21, 2015 Order (dismissing complaint against Monsignor John Enzler); June 11, 2015 Mem. Op. and Order (construing Plaintiff's *pro se* motion as an amended complaint asserting claims of race and age discrimination under Title VII of the Civil Rights Act and the Age Discrimination in Employment Act, respectively).

1

## II.  BACKGROUND

On January 15, 2014, Plaintiff, an African American woman over the age of 40, was hired as a Community Support Specialist ("CSS") with the Catholic Charities' Community Companions Program at the Lt. Joseph P. Kennedy Institute.  Def.s' Statement of Material Facts Not Genuinely in Dispute ("Def.'s Facts") ¶ 1, ECF No. 54 pp. 5-7; Def.'s Mem. of P. & A. at 2.  As a CSS, Plaintiff was responsible for the supervision and care of special needs children.  Def.'s Facts ¶ 4.  Plaintiff's employment was at-will and contingent upon her completion of a 90-day probationary period, *id*. ¶ 3, which "was scheduled to end on or about April 15, 2014."  Pl.'s Statement of Material Facts in Genuine Dispute ("Pl.'s Facts") ¶ 1, ECF No. 64.

On April 8, 2014, two teenagers--a 16-year-old-boy and a 15-year-old girl--were in Plaintiff's care.  Def.'s Facts ¶ 5; Pl.'s Facts ¶ 3.[2]  Plaintiff left the girl in a classroom while she escorted the boy to the bathroom.  Def.'s Facts ¶¶ 5-6.  The parties disagree on whether the girl was left alone.  *See* Def.'s Facts ¶ 7 ("The female child for which Ms. Turner had sole responsibility was left alone.") (citing incident reports); *cf.* Pl.'s Facts ¶ 3 ("Plaintiff advised and asked the other Community Support Specialists in the room if she may leave the female student . . . in her care, with them, so that she may properly supervise a bathroom trip.  Each . . . responded with ok, sure . . . before she left the female student in their care.").  Regardless, Administrative Coordinator Brenda Smallwood and CSS Kim Jorden "found the female child asleep on the classroom floor."  Def.'s Facts ¶ 10.  Smallwood "immediately called" Plaintiff's team leader, Jenna Craig, who with Smallwood, reported the incident to Plaintiff's supervisor, Senior Program Manager Daniel Hammond.  Def.'s Facts ¶ 10; *see* Pl.'s Facts, Ex. 1 (job offer

---

[2]     Plaintiff mistakenly lists April 14, 2014, as the date of the incident.

2

letter identifying Hammond as the individual to whom Plaintiff was to report).

Because leaving a child alone violated the Program's Policy on Abuse and Neglect, *see* Def.'s Ex. J, ECF No. 54-10, Plaintiff was placed on administrative leave pending the outcome of a neglect investigation by the Quality Assurance Department, which began on April 9, 2014. Def.'s Facts ¶¶ 9, 11-12; *see* Apr. 15, 2014 Memorandum ("Tasker Memo"), Def.'s Ex. I, ECF No. 54-9. Following her investigation of the incident, Deputy Director Sequaya Tasker concluded:

> Based on the facts provided through face to face interviews, email statements, documents collected, and written statements[,] the allegation of neglect is substantiated in regard to Betty Jean Turner. The evidence supports that Ms. Turner left K.S. in classroom B unattended. K.S. is a 15 year old . . . diagnosed with Severe MR and Autism. K.S. is non-verbal and communicates by pulling staff toward objects she desires.

Tasker Memo at 5. Tasker referred Plaintiff "to administration for disposition." *Id*. In an e-mail to Tasker during the investigation of Plaintiff, Program Manager Hammond conveyed "more information regarding the incitement of alleged abuse of K.S. by Ms. Betty Turner." Apr. 11, 2014 e-mail, Def.'s Ex. M, ECF No. 54-13. Hammond wrote:

> On 4/10/2014, I was contacted by [an individual] of Hebron Associates, K.S.'s house manager at her home. She informed me that the staff from Hebron reported on more than one occasion K.S. appeared unclean when they arrived at 6:00 p.m. to pick her up from the program. On one specific occasion, her evening staff member . . . noticed that K.S. had not been changed and had a soiled diaper. When she spoke to Ms. Turner, who was assigned to K.S. that day, Ms. Turner stated that she did not notice, and asked the Hebron staff member to change her.

*Id*. Hammond wrote further that he had informed the individuals that "Hebron staff should not be directed to care for one of our participants" and that "K.S. will be under the care of another staff member moving forward." *Id*.

On May 8, 2014, following an e-mail discussion between Human Resources staff and the

3

Executive Director of the Kennedy Institute, *see* Def.'s Ex. K, ECF No. 54-11, Defendant issued a "Notice of Final Decision" over Hammond's signature, immediately terminating Plaintiff's employment "for failure to comply with the Agency's policy and procedure on Abuse and Neglect." Def.'s Ex. O, ECF No. 54-15. The Notice cited the neglect finding from the April 8, 2014 incident and concluded that alone provided "sufficient evidence to warrant the termination of [Plaintiff's] employment." *Id*. According to Hammond, "Human resources" makes the ultimate decision to terminate an employee. Hammond Dep. at 49-50, ECF No. 54-14.

In a letter to Human Resources Director Michele Sparks dated May 14, 2014, "RE: Unfair Discriminatory Termination," Plaintiff stated that the allegation of neglect was false, and she requested "to review the determination report again" and to be reinstated. Pl.'s May 14 Letter at 1, Def.'s Ex. P, ECF No. 54-16. Plaintiff purported to lodge charges of "discriminatory action by the Kennedy Institute" and "ask[ed] if the following considerations were made prior to the determination of the Quality Assurance team upholding the allegation and subsequent termination." *Id*. at 1. Plaintiff enumerated six "considerations," which consisted of her denials that K.S. was left lying in an unsafe position and that K.S. was left alone in the classroom. Plaintiff posited that "the staff and co-workers" had "ulterior motives" and had singled her out because: (1) she "felt obligated to report an abuse allegation [concerning a current employee] witnessed several months earlier which [she] found was not kept totally confidential and anonymous as [she] had asked"; (2) she had applied for several positions, "one being a Teacher, Group Leader, and a Director position at the Kennedy Institute"; and (3) "[t]he staff['s] motives . . . seem more causal for the allegation and termination than the incident itself." Pl.'s May 14 Letter at 3. Plaintiff concluded: "This appears to be nothing more than malicious

intent, discriminatory, and punitive in nature, prima facie." *Id*.

In a letter dated May 23, 2014, Senior Human Resources Manager Chris Waterman, acting in Sparks' absence due to a scheduled leave, replied to Plaintiff as follows: "After reading the letters addressed to Ms. Vanessa Stewart on May 8, 2014, and Dr. Michele Sparks on May 14, 2014, at your request, I thoroughly reviewed the findings completed by the Quality Assurance Department resulting from an incident occurring on April 8, 2014. After careful consideration, Catholic Charities will not be reinstating your employment." Def.'s Ex. Q, ECF No. 54-17.

Plaintiff filed this civil action on June 27, 2014, claiming that she was fired after receiving a false allegation of neglect, but she had alleged no facts to support a discrimination claim. *See* Jun. 11, 2015 Mem. Op. at 1, ECF No. 16. The Court subsequently construed Plaintiff's *pro se* filings liberally, deemed her motion containing allegations of race and age discrimination to be an amended complaint, and denied Defendant's motion to dismiss "premised solely on the factually deficient initial complaint."[3] *Id*. at 2.

### III. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary

---

[3] In her statement of facts, Plaintiff adds for the first time gender as an alleged basis for her termination. Pl.'s Fact Stmt. ¶ 10, ECF No. 64 p. 13. The Court first entered a Scheduling Order on July 27, 2015, which included a deadline for the parties to amend the pleadings. In addition, that order has been amended several times mostly to accommodate Plaintiff. Not once has Plaintiff sought to amend the complaint to add a gender discrimination claim; such a claim will not be permitted at this late stage of the proceedings. *See Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 344 (D.C. Cir. 1997) (in exercising its discretion to grant leave to amend a complaint, a court may consider, among other factors, "undue delay" and "undue prejudice to the opposing party") (citation and internal quotation marks omitted)).

judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A "material" fact is one capable of affecting the substantive outcome of the litigation.  S*ee Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).  The inquiry under Rule 56 is essentially "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.

The principal purpose of summary judgment is to determine whether there is a genuine need for trial by disposing of factually unsupported claims or defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323.  In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial.  *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324.  The non-movant may not rest upon mere allegations or denials but must instead present affirmative evidence.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (citing *Anderson*, 477 U.S. at 257).

In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence."  *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007).  All underlying facts and inferences must be analyzed in the light most favorable to the non-movant.  *See Anderson*, 477 U.S. at 255.  Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial, *see Greene v. Dalton*,

164 F.3d 671, 675 (D.C. Cir. 1999), nor does "plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined by other credible evidence," *Chenari v. George Washington Univ.*, ___ F. 3d ___, ___, 2017 WL 541012, at *4 (D.C. Cir. Feb. 10, 2017) (citation and internal quotation marks omitted).

## IV. ANALYSIS

### A. Legal Framework

Under Title VII of the Civil Rights Act of 1964 ("Title VII"), employers may not "discharge any individual, or otherwise . . . discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment" because of the individual's race. 42 U.S.C. § 2000e -2(a). "To prevail [on this claim], a plaintiff must demonstrate that race was 'a motivating factor' for the termination." *DeJesus v. WP Co. LLC*, 841 F.3d 527, 532 (D.C. Cir. 2016) (quoting 42 U.S.C. § 2000e–2(m) (other citation omitted)). Similarly, under the Age Discrimination in Employment Act of 1967 ("ADEA"), employers may not "discharge any individual or otherwise discriminate against any individual . . . because of [her] age," 29 U.S.C. § 623(a)(1), provided that the individual is "at least 40 years of age," *id*. § 631(a). To prevail on an ADEA claim, however, "'[a] plaintiff must prove by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision.'" *DeJesus*, 841 F.3d at 532 (quoting *Gross v. FBL Fin. Servs., Inc*., 557 U.S. 167, 177-78 (2009)).

In this circuit, two key cases outline the litigation framework for discrimination claims under Title VII and ADEA: *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); and *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490 (D.C. Cir. 2008). *See Hall v. Giant Food, Inc*., 175 F.3d 1074, 1077 (D.C. Cir. 1999) ("In analyzing a discrimination claim under the

ADEA, we apply the framework developed in the context of Title VII litigation[.]") (citation omitted)); *accord Moses v. Kerry*, 110 F. Supp. 3d 204, 208-09 (D.D.C. 2015), *aff'd*, No. 15-5241, 2016 WL 1272943 (D.C. Cir. Feb. 8, 2016).

The three-part *McDonnell Douglas* burden-shifting framework applies where, as here, a plaintiff offers "only indirect evidence of unlawful discrimination." *Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003). Under *McDonnell Douglas*, the plaintiff has the initial burden of production to establish a prima facie case of discrimination; if she does, then the employer must articulate a legitimate, non-discriminatory reason for its action; and if it does, the plaintiff must show that the employer's reason was a pretextual cover for discrimination. 411 U.S. at 802-05. Although *McDonnell Douglas* shifts the burden of production between the parties, the plaintiff retains the burden of persuasion. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08 (1993).

Because the employer has asserted a legitimate, non-discriminatory reason for the adverse employment action—a violation of its neglect policy—this Court must resolve at this summary judgment stage one central question: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race [or age]?" *Brady*, 520 F.3d at 494. In addressing the question, the Court must examine the totality of the evidence and ask "whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff . . . or any contrary evidence that may be available to the employer." *Hamilton v. Geithner*, 666 F.3d 1344, 1351 (D.C. Cir. 2012)

8

(quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc)).

As this Court has explained:

> [Plaintiff] can meet her burden of production in multiple ways. She can "suggest[ ] that the employer treated other employees of a different race . . . more favorably," or "attempt to demonstrate that [the employer] is making up or lying about the underlying facts that formed the predicate for the employment decision." [Plaintiff] can also point to "changes and inconsistencies in the stated reasons for the adverse action; the employer's failure to follow established procedures or criteria; the employer's general treatment of minority employees; or discriminatory statements by the decisionmaker."

*Wang v. Washington Metro. Area Transit Auth.*, ___ F. Supp. 3d. ___, ___, 2016 WL 4007067, at *14 (D.D.C. July 25, 2016) (quoting *Brady*, 520 at 494-95 (internal citations omitted)). In addition,

> [Plaintiff] "might also establish pretext with evidence that a factual determination underlying an adverse employment action is egregiously wrong," or with evidence that "[a]n employer's investigation . . . is so unsystematic and incomplete that a factfinder could conclude that the employer sought, not to discover the truth, but to cover up its own discrimination."

*Id.* (quoting *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 296 (D.C. Cir. 2015) (other citations omitted)).

### B.  Plaintiff's Rebuttal to Defendant's Termination Decision

In her opposition to the summary judgment motion, Plaintiff focuses on the parties' disagreement over whether K.S. was left unattended and, if so, by whom. *See* Pl.'s Mem. of P. & A. at 1. Plaintiff asserts that "[i]f the child was left alone, she was left alone by other Community Support Specialists and staff who were in the room and these [CSSs] and staff members whom were younger, two of three not African American, and they were not subject to

any adverse action."[4]  *Id*. at 5.   In her unsworn statement of facts, Plaintiff contends that she "was responsible for the care and participation of a male and female student in concert with the other Community Support Specialists," and that she "conducted ongoing communications with the three [CSSs] in the room."   Pl.'s Facts ¶ 2.   Plaintiff names three CSSs whom she alleges were in the classroom and had "responded with, ok, sure, and ok before she left the female student in their care."[5]   *Id*. ¶ 3.   Plaintiff also points to her Exhibit III to support her claim that the other CSSs had "left the room after Ms. Turner; therefore, leaving the female child in the classroom alone."[6]   *Id*. (parenthesis omitted).   Finally, Plaintiff contends, without citing corroborating evidence, that "[o]ther staff have, on numerous occasions handled the situation the

---

[4]     In her deposition testimony, Plaintiff identifies most of the individuals involved as African American or Hispanic women in their thirties and forties.   *See* Turner Dep. at 44-45; 57-58; 61-62, ECF No. 54-2.   Notably, Plaintiff confirms that Tasker--who conducted the investigation that led to the termination decision--is African American or Hispanic, and Human Resources Director Sparks--who, according to Hammond, would have made the ultimate decision to terminate Plaintiff--is African American.   *Id*. at 58, 61.

[5]     Notwithstanding the order explaining a *pro se* party's role in responding to a summary judgment motion, ECF No. 55, Plaintiff has not pointed to any sworn testimony (including her own), or any other evidence in the record, to corroborate this asserted fact.

[6]     Plaintiff's reliance on this exhibit is puzzling.   Plaintiff's Exhibit III, ECF No. 64, pp. 39-41, is the handwritten statement of Yazmeidy Rodriguez, which was included in Tasker's Investigation Report.   According to Rodriguez, she, Kim Jorden and Jasmine Billingsly "were getting ready to go play Wii in the other room [and] walked over to the other room with the kids we were assigned to.   *Kim told Jasmine* to watch [name redacted] because she had to go back to the classroom to get something (or bathroom) I don't remember.   Kim found [name redacted] alone with Brenda Smallwood."   Rodriguez Stmt. at 1 (emphasis added).   Rodriguez's brief statement does not mention Plaintiff's purported request to watch K.S., nor does it place Rodriguez in the classroom at the relevant time.   Rather, Rodriguez's statement, read in conjunction with the handwritten statements of Jorden and Smallwood, *see* Pl.'s Exs. IV and V, fully corroborates Defendant's position that Jorden and Smallwood found K.S., who was in Plaintiff's care, alone lying on the classroom floor in an obscure area.   Jorden wrote that after finding K.S., she left the room only after Smallwood had returned to the classroom with Jenna Craig to "handle" matters from there.   Jorden Stmt. at 1, ECF No. 64, p. 43.

exact same way as Plaintiff, but they were not disciplined, instead one . . . was promoted." Pl.'s Facts ¶ 9. What is missing from Plaintiff's asserted facts is anything that directly connects her race or age to the decision to terminate her employment.

When pressed about her race discrimination claim during her deposition, Plaintiff suggested that her white counterpart was treated more favorably after committing the same misconduct. Plaintiff testifies that shortly after she was hired, "the lady Kim," a "white female about my age" had "pushed a [mentally challenged] child, and . . . she went through an investigation of one month and returned to the job." Turner Dep. at 59:17-20. Defendant identifies then-54-year-old Kim Jorden as the individual Plaintiff "is likely referring to." Def.'s Mem. at 12. Plaintiff admits that she "didn't really witness" the push, Turner Dep. at 60:15, and did not know the outcome of the investigation, but she "just kn[ew] that [Jorden] was there after one month." *Id*. at 61:8.

"For a plaintiff to prove that another employee is similarly situated, she must demonstrate that she and the similarly-situated employees were 'charged with offenses of comparable seriousness' and that 'all of the relevant aspects of [her] employment situation were nearly identical to those of the other employees.'" *Huckstep v. Washington Metro. Area Transit Auth.*, ___ F. Supp. 3d ___, ____, 2016 WL 6208358, at *6 (D.D.C. Oct. 24, 2016) (quoting *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1116 (D.C. Cir. 2016) (other citation omitted). In assessing similarity, "courts consider several factors, including the 'similarity of the plaintiff's and the putative comparator's jobs and job duties, whether they were disciplined by the same supervisor, and . . . the similarity of their offenses.'" *Id*. (quoting *Burley v. Nat'l Passenger Rail Corp*., 801 F.3d 290, 301 (D.C. Cir. 2015). Plaintiff has produced no evidence from which a

reasonable jury could find or infer that she and Jorden were similarly situated beyond the fact that they both were CSSs and had been the subject of an investigation by the Quality Assurance Department. *See* Def.'s Mem. at 12.

Plaintiff was charged with a specific instance of neglect. In contrast, Plaintiff speculates that "some could say" that Jorden's pushing a child "was alleged abuse or neglect or what have you." Turner Dep. at 60:6-8. But when pressed by Plaintiff during his deposition about the outcome of Jorden's investigation, Hammond, who supervised Plaintiff and Jorden, could "say only . . . that if it was determined that abuse or neglect occurred, then that individual could not be re-enrolled as an employee." Hammond Dep. at 36:7-10, ECF No. 54-14. Therefore, Jorden's continued employment following her investigation tends to disprove Plaintiff's factually unsupported argument that she and Jorden had committed similar offenses but were treated differently. Regardless, because Plaintiff has produced no evidence to permit the requisite comparisons, "the court may [and does] decide, as a matter of law, that the two are not similarly situated." *Steele v. Carter*, 192 F. Supp. 3d 151, 170 (D.D.C. 2016) (citations and internal quotation marks omitted); *see Moses*, 110 F. Supp. 3d at 213 (noting that "unfounded assertions" based on the plaintiff's "own beliefs and suspicions" cannot serve to overcome summary judgment) (citing cases)).

Plaintiff simply has produced no evidence to "permit a reasonable jury to find that [her firing] was motivated by discriminatory animus," *Williams v. Dodaro*, 576 F. Supp. 2d 72, 87 (D.D.C. 2008), on the part of the decision-maker or "an employee who influenced, but did not make, the ultimate employment decision," *Staub v. Proctor Hosp.*, 562 U.S. 411, 413 (2011). And "[n]either Title VII nor the ADEA protects [Plaintiff] from a co-worker's personal vendetta

that is motivated by neither race nor age."[7] *Moses*, 110 F. Supp. 3d at 214. Rather, like the plaintiff in *Brady,* Plaintiff "misunderstands the relevant factual issue. The question is not whether the underlying . . . incident occurred; rather, the issue is whether the employer honestly and reasonably believed that [it] occurred." *Brady*, 520 F.3d at 496. And "[w]hile the plaintiff need not 'submit evidence over and above rebutting the employer's stated explanation in order to avoid summary judgment,' [she] must do more than merely state a disagreement with, or disbelief of, the explanation" to sustain her burden. *Warner v. Vance-Cooks*, 956 F. Supp. 2d 129, 150 (D.D.C. 2013) (quoting *Hamilton v. Geithner*, 666 F.3d 1344, 1351 (D.C. Cir. 2012)).

Where, as here, a plaintiff has produced no evidence from which a reasonable jury could find or infer discriminatory animus, the employer "prevails [on summary judgment] if it honestly believes in the reasons it offers[,]" *Brady*, 520 F.3d at 495, quoting *Fischbach v. D.C. Dep't of*

---

[7] In her letter to Human Resources Director Sparks, Def.'s Ex. P, Plaintiff insinuates that supervisor Daniel Hammond and/or team leader Jenna Craig may have felt threatened by her alleged application for other job positions, including that of a Director and a Group Leader. Even if true, actions driven by envy, jealousy or fear are not proscribed by the federal anti-discrimination statutes and thus fail to present a triable issue. *See Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1291 (D.C. Cir. 1998) (explaining that "[i]f a plaintiff shoots himself in the foot" by rebutting the employer's nondiscriminatory explanation "with evidence that in fact the real reason" had nothing to do with age or race discrimination but some other unsavory motive, "surely there is no point in sending the case to the jury") (citations omitted)). Furthermore, Plaintiff has not alleged, let alone shown on summary judgment, that Deputy Director Tasker harbored any discriminatory animus when she investigated the incident and prepared the report upon which Defendant relied to terminate Plaintiff's employment. *See Morris v. McCarthy*, 825 F.3d 658, 668 (D.C. Cir. 2016) (explaining that "[u]nder a cat's-paw theory of discrimination, an employer may be held liable for discriminatory acts by a direct supervisor—even where that supervisor is not the final decision-maker—if '[1] [the] supervisor performs an act motivated by [discriminatory] animus [2] that is intended by the supervisor to cause an adverse employment action, and . . . [3] that act is a proximate cause of the ultimate employment action.'") (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011) (other citations omitted; alterations in original)). Nor has Plaintiff alleged, let alone shown on summary judgment, that the final decision-maker, HR Director Sparks, harbored any discriminatory animus.

*Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996), and if its "stated belief about the underlying facts is reasonable in light of the evidence[,]" *id*. The Court finds such is the case here. The evidence in the record establishes overwhelmingly that a special needs child admittedly under Plaintiff's supervision was discovered alone in a classroom. Defendant promptly launched a thorough investigation of the incident and concluded that Plaintiff had violated its written policy on neglect. Not one witness has corroborated Plaintiff's account that other adult individuals in the classroom knew that she was leaving the classroom and agreed to watch the child. Accordingly, the conclusions resulting from the defendant's investigation were reasonable in light of the evidence. And plaintiff has failed to bring into question the honesty of defendant's belief resulting from the investigation that the neglect occurred and that it was attributable to plaintiff's actions, not anybody else's. Consequently, because the Court finds that the summary judgment record is completely devoid of evidence that Plaintiff suffered race or age discrimination, plaintiff's disagreement with the investigation's findings is inconsequential.

## V.   CONCLUSION

For the foregoing reasons, the Court concludes that no reasonable jury could find that Defendant's legitimate, non-discriminatory reasons for terminating Plaintiff's employment were pretextual and find for Plaintiff on her factually unsupported claims of race and age discrimination; therefore, Defendant is entitled to judgment as a matter of law. A separate order accompanies this Memorandum Opinion.

_____/s/_____
RUDOLPH CONTRERAS
DATE:  February 21, 2017                United States District Judge